IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MELISSA PHATISIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:13CV360–HEH |
| | ) |
| JASON CLARK, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(Granting Defendants' Motions to Dismiss under Rule 12(b)(6))

This is a civil rights action alleging a conspiracy among law enforcement officials to maliciously prosecute Plaintiff, Melissa Phatisis, in violation of her First and Fourth Amendment rights under the United States Constitution. The Complaint also contains several associated common law torts. Defendants Jason Clark ("Clark") and Tripp Haney ("Haney") are Spotsylvania County Sheriff's deputies. Defendant Brian Boyle ("Boyle") is an Assistant Commonwealth's Attorney for Spotsylvania County, Virginia. Clark, Haney and Boyle (collectively "Defendants") are sued in both their official and individual capacities.

The matter is presently before the Court on the Defendants' Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6). Defendant Boyle also seeks to invoke absolute immunity for any alleged liability. All parties have filed detailed memoranda supporting their respective positions. Newly-engaged counsel have been afforded an opportunity to file supplemental memoranda. The Court will dispense with oral

argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid in the decisional process.

The claims at hand evolve from a series of events occurring in the Counties of Spotsylvania and Stafford. According to the Complaint,[1] which governs the Court's analysis at this stage, Deputy Sheriff Clark obtained a search warrant for Plaintiff's home in Spotsylvania County on May 5, 2010. (Compl. ¶ 13, ECF No. 1.) Clark executed the affidavit which, according to Plaintiff, omitted important facts and was infected with inconsistencies. Although the Complaint does not allege that the factual basis for the search warrant fell short of probable cause, Plaintiff contends that if the omissions and inconsistencies "had been brought out by the affiant, [they] would likely have caused the Magistrate to refuse the warrant." (*Id.* at ¶ 15.)[2] The search warrant was served on the following day, May 6, 2010, but the Complaint alleges that "there was no evidence found in that raid that supported any implication of drug sales or manufacturing on the part of Melissa Phatisis." (*Id.* at ¶ 20.)

The Complaint also mentions in passing that Clark conducted a warrantless search of another piece of property in Stafford County where Plaintiff formerly resided. (*Id.* at ¶ 26.) The Complaint is silent as to what, if any, property was seized from the Stafford County location. The Complaint does recite that notwithstanding the lack of evidence

---

[1] The events outlined in the Complaint are not in chronological order making navigation and full comprehension challenging.
[2] Although Plaintiff refers to the affidavit supporting the May 5, 2010 search warrant in her opposition to the Defendants' Motion to Dismiss, a copy of the affidavit has not been supplied to the Court. Despite generalized allegations, none of the counts in the Complaint challenge the legality of the search of Plaintiff's residence.

2

against Plaintiff, Defendants Clark and Haney caused her to be charged with distribution of marijuana and conspiracy to distribute marijuana in the Spotsylvania County General District Court on May 7, 2010. No disposition of these charges is mentioned in the Complaint. On February 22, 2011, apparently as a result of grand jury action, Plaintiff was charged in a three count indictment. The charges included conspiracy to manufacture marijuana, conspiracy to distribute marijuana and possession of marijuana. Plaintiff contends that these charges were the result of undisclosed "false accusations." (*Id.* at ¶¶ 24, 26.) According to the Complaint, these charges were presented to the grand jury at the direction of Assistant Commonwealth's Attorney Boyle. (*Id.* at ¶¶ 34, 35.) Plaintiff's husband, Nicholas Phatisis, was also charged with similar offenses in the Spotsylvania County Circuit Court. (*Id.* at ¶ 29.)

The Complaint further alleges that the charges against Plaintiff were inspired by her husband's refusal to enter into a plea agreement satisfactory to Boyle. Plaintiff contends that Boyle rejected the plea agreement because the agreed sentencing recommendation was inadequate. The Complaint maintains that Boyle knew that the evidence was insufficient to convict Plaintiff of the offenses charged. (*Id.* at ¶ 31.)

As a further part of the conspiracy alleged in the Complaint, Plaintiff contends that because of her husband's refusal to accept a plea agreement, Haney and Clark caused her to be charged with three counts of child neglect "based ostensibly on the raid of the house on the night of May 6, 2010 and the alleged drug activities inside the house notwithstanding the complete and absolute lack of evidence of any wrongdoing on the part of Melissa Phatisis." (*Id.* at ¶ 32.) However, "[t]hese charges were later dropped

3

on motion of the Assistant Commonwealth's Attorney, Brian Boyle, due to the complete lack of evidence available to support the charges against her." (*Id.*) Plaintiff alleges that Boyle informed two separate attorneys that her prosecution was brought solely to pressure her husband into accepting a harsher sentence under the plea agreement. Boyle, according to the Complaint, acknowledged during that conversation that he did not have sufficient evidence to prosecute Plaintiff for the offenses alleged. (*Id.* at ¶ 35.)

Following Plaintiff's husband's plea of guilty, Boyle moved for entry of a *nolle prosequi* of all charges against Plaintiff. (*Id.* at ¶ 38.) Plaintiff's husband noted an appeal of his sentence to the Court of Appeal of Virginia. (*Id.* at ¶ 39.)

Subsequently, Plaintiff filed a motion in the Spotsylvania County Circuit Court seeking return of seized property. This action was resolved in her favor and the court ordered the return of her property. When Spotsylvania County authorities failed to respond to the court order in a timely manner, Plaintiff filed a Warrant in Detinue against Clark. The Complaint alleges that in response, Defendants conspired to have charges leveled against Plaintiff in Stafford County to allegedly punish her for seeking return of the property. According to the Complaint, the Defendants knew that the charges were baseless. (*Id.* at ¶¶ 44–46.) Plaintiff maintains that Boyle, "in furtherance of the agreement and conspiracy with Tripp Haney and Jason Clark, contacted the Stafford County authorities in order to commence a prosecution against [Plaintiff] in order to retaliate against her and to punish her for filing the lawsuit against Jason Clark." (*Id.* at ¶ 47.) On September 6, 2011, Plaintiff was charged in Stafford County with manufacturing and distribution of marijuana on or about May 6, 2010. These charges were eventually

terminated by *nolle prosequi*. (*Id.* at ¶¶ 48, 50.) The Complaint alleges that the Stafford County Commonwealth's Attorney advised counsel for Plaintiff that the cases against her were pursued solely in retaliation for her husband's appeal of his sentence and her civil action to regain possession of her property. (*Id.* at ¶ 51.) This lawsuit followed.

The standard of review of Rule 12(b)(6) motions is now well settled. To survive such review, a complaint must allege enough facts to state a claim to relief that is plausible on its face. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). In other words, the court must determine whether it is plausible that the factual allegations in the complaint are "enough to raise a right to relief above the speculative level." *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (citations omitted).

To withstand a Rule 12(b)(6) challenge, a complaint does not need detailed factual allegations, but must be sufficient to demonstrate an entitlement to relief. This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 1965 (2007). Moreover, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986).

Before reviewing the complaint for facial sufficiency under Rule 12(b)(6), the Court will address the threshold issue of whether Defendant Boyle was acting within the scope of his prosecutorial duties and is entitled to absolute immunity. Few doctrines are more solidly established than the immunity of prosecutors from liability for damages for acts committed in the initiation and prosecution of a criminal case. As the United States

5

Supreme Court pointed out in the seminal case of *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984 (1976):

> Although the precise contours of their holdings have been unclear at times, at bottom [decisions of United States Courts of Appeals] are virtually unanimous that a prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties. These courts sometimes have described the prosecutor's immunity as a form of "*quasi*-judicial immunity" and referred to it as derivative of immunity of judges recognized in *Pierson v. Ray* [386 U.S. 547, 554–55, 87 S. Ct. 1213, 1218 (1987)].

424 U.S. at 420, 96 S. Ct. at 990 (citations omitted).

Prosecutorial immunity is absolute and is grounded on principle of public policy. As the U.S. Supreme Court emphasized in *Imbler*,

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.

*Id.* at 424–25, 96 S. Ct. at 992.

In staking the boundaries of absolute immunity, courts have adopted a functional approach. *Burns v. Reed*, 500 U.S. 478, 486, 111 S. Ct. 1934, 1939 (1991). Courts have drawn a clear distinction between investigatory and prosecutorial functions. While prosecutorial functions must be closely allied with the judicial process, it may often involve actions apart from the courtroom. For example, "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made," will

typically entitle a prosecutor to absolute immunity. *Buckley v. Fitzsimmons, et al.*, 509 U.S. 259, 273, 113 S. Ct. 2606, 2615 (1993). Furthermore, as the U.S. Supreme Court noted in *Imbler*, an out of court "effort to control the presentation of his witness' testimony" was entitled to absolute immunity because it was "fairly within [the prosecutor's] function as an advocate." 424 U.S. at 430 n.32, 96 S. Ct. at 996.

The court in *Buckley* cautioned that "[t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." 509 U.S. at 273, 113 S. Ct. at 2616. Therefore in determining whether Defendant Boyle is entitled to absolute immunity, the Court must determine from the allegations in the Complaint whether he was acting as an investigator or an advocate.[3]

Boyle, an Assistant Commonwealth's Attorney for Spotsylvania County, Virginia, is named in four counts of the Complaint. In Count II, Plaintiff alleges that Boyle, acting in league with Haney and Clark, violated her civil rights by causing her malicious prosecution in Stafford County, Virginia. In Count III, Plaintiff alleges that Boyle conspired with Haney and Clark to violate her civil rights by causing her false arrest and malicious prosecution. In Count IV, Plaintiff contends that Boyle, in association with

---

[3] As the U.S. Supreme Court acknowledged in *Kalina v. Fletcher*, "the absolute immunity that protects the prosecutor's role as an advocate is not grounded in any special 'esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" 522 U.S. 118, 127, 118 S. Ct. 502, 508 (1997) (citations omitted). "To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. *Imbler*, 424 U.S. at 427, 96 S. Ct. at 993.

7

Haney and Clark, violated her civil rights by causing a retaliatory prosecution in response to her filing suit against Clark for return of her seized property. The claims in Counts II, III and IV are premised on 42 U.S.C. § 1983.[4] In Count VII of her Complaint, styled as a common law tort claim, Plaintiff alleges that Boyle, along with Haney and Clark, caused her to be arrested and legal proceedings to be instituted against her in Stafford County without probable cause. Ordinarily, in order to determine if Boyle is entitled to absolute immunity, the Court would review the allegations supporting each claim in the Complaint individually. However, because of the manner in which the Complaint was drafted, it is difficult to associate which factual allegations concerning Boyle relate to the specific claims alleged.

According to the Complaint, as a result of the search warrant executed on Plaintiff's residence, her husband was charged with conspiracy to manufacture and distribute marijuana. When Plaintiff's husband declined to accept a plea agreement under the terms and conditions offered by Boyle, with the encouragement of Haney and Clark, Boyle directed that Plaintiff be charged with three counts of child neglect, "based ostensibly on the raid of the house on the night of May 6, 2010 and the alleged drug activities inside the house notwithstanding the complete and absolute lack of evidence of any wrongdoing on the part of Melissa Phatisis." (Compl. ¶ 32.) It would also appear from the Complaint that Boyle directed that Plaintiff be charged in a three count indictment with conspiracy to manufacture and distribute marijuana. (*Id.* at ¶¶ 26, 34, 35.)

---

[4] Count V merely seeks punitive damages and does not allege a substantive claim.

These charges were eventually dismissed by Boyle following her husband's entry of a plea of guilty. Irrespective of Boyle's motives, his decision,[5] after a review of evidence, to bring charges against Plaintiff were clearly within the scope of his prosecutorial duties. Boyle is therefore entitled to absolute immunity with respect to this allegation.

The next action on Boyle's part, allegedly in furtherance of the conspiracy with Haney and Clark, was his contact with the Stafford County authorities, "in order to commence a prosecution against [Plaintiff] in order to retaliate against her and to punish her for filing the lawsuit against Jason Clark." (Compl. ¶ 47.) Plaintiff had earlier filed a Warrant in Detinue against Clark for return of property seized from her residence during service of the search warrant. Allegedly, as a result of this contact, Plaintiff was indicted for manufacturing and distributing marijuana in violation of Virginia law. These charges were eventually dismissed.

Based on the skeletal and conclusory allegations describing the initiation of Plaintiff's prosecution in Stafford County for manufacturing and distributing marijuana, it is difficult to determine what constituted a contact. Since Stafford County authorities obviously made an independent decision to indict Plaintiff, it would appear that Boyle was acting squarely within his prosecutorial duties and is cloaked with absolute

---

[5] As long as Boyle was acting within his prosecutorial duties, his motives are irrelevant—the immunity is absolute. *Burns*, 500 U.S. at 483, 111 S. Ct. at 1938; *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005).

immunity.[6] His immunity extends to common law claims in Count VII as well. *Imbler*, 424, U.S. at 427, 96 S. Ct. at 993.

Viewed from a different angle, Boyle's contact with another jurisdiction in his capacity as a state prosecutor in order to commence a prosecution against Plaintiff, even if inspired by the lawsuit against Clark, does not state a plausible claim for a violation of her civil rights. Conspicuously absent from the Complaint is any indication of what information Boyle provided or whether he even initiated the contact. Furthermore, the conspiracy alleged in Count III is unsupported by any factual basis, other than a bald assertion that it existed. The charges in Stafford County were initiated by direct indictment presented by the Commonwealth's Attorney of that County. Therefore, even if Boyle's contact was retaliatory, the independent decisions of the Stafford County prosecutor and the grand jury were "superseding causes that [broke] the causal chain." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).[7] Accordingly, the civil rights claims relating to the Stafford County prosecution fail to survive Boyle's challenge under Fed. R. Civ. P. 12(b)(6).

Turning next to the constitutional claims against the sheriff's deputies Clark and Haney, the Complaint is again rich in conclusions but lean on supporting facts. The

---

[6] Although Plaintiff steadfastly maintains that these charges were baseless, it is important to note that the prosecution in Stafford County could not have been initiated by Boyle, whose statutory authority was limited to Spotsylvania County. *See* Va. Code § 15.2-1627(B); *Miller v. Commonwealth*, 509 S.E.2d 532, 534–35 (1999).

[7] To state a malicious prosecution claim under § 1983, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause and (3) the criminal proceedings terminated in plaintiff's favor. *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). The same causal relationship between protected speech and retaliatory action is required in First Amendment cases. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685–86 (4th Cir. 2000.

Complaint portrays a conspiracy—abetted by an Assistant Commonwealth's Attorney—to violate Plaintiff's constitutional rights by causing her to be maliciously prosecuted in both Spotsylvania and Stafford Counties. The Complaint describes her prosecution in each county as being based either on false accusations or an absolute lack of evidence of any wrongdoing on her part. (Compl. ¶¶ 26, 32, 48.) It fails, however, to particularize the accusations in question or specify how Clark and Haney "caused her prosecution." Moreover, the Complaint does not allege that Clark or Haney provided false information or what, if any, information was provided. As crafted, this contention by Plaintiff simply invites speculation.

In paragraph 32 of her Complaint, Plaintiff appears to acknowledge "alleged drug activities inside the house," but firmly denies any wrongdoing on her part.[8] The gravamen of her accusations appears to be that Clark and Haney pursued criminal charges for which there was insufficient evidence to implicate Plaintiff. In fact, the indictments against Plaintiff were eventually dismissed or *nolle prossed* for that purported reason. (*Id.* at ¶¶ 32, 38, 51.) Her husband, however, pled guilty to related charges. (*Id.* at ¶ 36.)

In their memoranda supporting their motions to dismiss, Clark and Haney contend that their actions were not the direct cause of Plaintiff's prosecution in either county. Although Clark and Haney made the initial arrest of Plaintiff on drug trafficking

---

[8] Without specifically alleging an absence of probable cause, Plaintiff's Opposition to Defendants' Motions to Dismiss contains an elaborate explanation of the perceived deficiencies in the affidavit supporting the search warrant for her residence. Plaintiff, however, fails to include any claim for related damages in Count I. (Pl.'s Opp'n to Defs.' Mot. to Dismiss 4–6, ECF No. 18.)

charges,[9] she was indicted by a grand jury for conspiracy to manufacture marijuana, conspiracy to distribute marijuana, and possession of marijuana, based upon the search of her home. As a result of the alleged drug activities inside the house, Plaintiff was subsequently charged also with child neglect. Although the dates and sequence of events in the Complaint are difficult to follow, it would appear from paragraph 35 of the Complaint that the charges against Plaintiff were initiated at Boyle's direction in order to convince Plaintiff's husband to accept a plea agreement. Such prosecutorial action, particularly coupled with indictment by a grand jury, clearly constituted intervening superseding causes. *Evans*, 703 F.3d at 647.

Finally, as to Plaintiff's indictment in Stafford County, for manufacturing and distribution of marijuana, allegedly in retaliation for filing a civil suit against Clark, the Complaint unequivocally states that it was Boyle's communication with Stafford County authorities that commenced the prosecution. The Complaint simply states that it was done by Boyle in furtherance of the agreement in conspiracy with Haney and Clark. (Compl. ¶ 47.) This threadbare allegation may entice speculation, but it fails to state a plausible claim against the deputies.

In reviewing a defendant's motion under Rule 12(b)(6), a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Legal conclusions, however, enjoy no such deference. *Ashcroft v. Iqbal*, 556

---

[9] With respect to Plaintiff's initial arrest, Haney alleges in his Brief in Support of Supplemental Rule 12(b)(6) Motion to Dismiss that these charges were *nolle prossed* in general district court on July 15, 2010, rendering any claim for relief beyond the statute of limitations. (Br. in Supp. of Supplemental Mot. to Dismiss 3–4, ECF No. 34.) This allegation, however, is not contained in the Complaint.

U.S. 662, 678, 129 S. Ct. 1937, 1950–51 (2009). As the court pointed out in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." 556 U.S. at 678, 129 S. Ct. at 1949 (internal quotations omitted). To state a plausible claim for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. To discount such unadorned conclusory allegations "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ibqal*, 556 U.S. at 679, 129 S. Ct. at 1950. This approach recognizes that "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966). As the court further noted in *Francis*, "[a]t bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 588 F.3d at 193 (internal quotation marks omitted).

Even viewed in the light most favorable to Plaintiff, the Complaint in this case is a patchwork quilt of legal conclusions with minimal supporting factual foundation. Most of the prosecutorial actions on which the Complaint is based were undertaken at the behest of the Assistant Commonwealth's Attorney, whose actions are shielded by

13

absolute immunity. Those initiated by Clark and Haney were superseded by subsequent acts of independent decision makers. There is no allegation that the deputies lied to or misled the prosecutor or grand jury. Counts I through V will therefore be dismissed without prejudice as to Clark and Haney.

Finally, Clark and Haney are accused in Counts VI and VII of common law malicious prosecution. The Court will assume that these claims are animated by Virginia law in the absence of designation to the contrary. Historically, actions for malicious prosecution arising from criminal proceedings are disfavored in Virginia and "the requirements for maintaining such actions are more stringent than those applied to other tort cases" to ensure that criminal prosecutions are brought in appropriate cases without fear of reprisal by civil action. *O'Connor v. Tice*, 281 Va. 1, 7 (2011).

Unfortunately, the litigants have devoted minimal attention to the common law claims in their position papers. To prevail in an action for malicious prosecution, four elements must be proven, "that the prosecution was (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Lewis v. Kei*, 281 Va. 715, 722 (2011).

Plaintiff was initially charged in Spotsylvania County, on May 7, 2010, with distribution of marijuana. Although the Complaint mentions the "lack of evidence against Melissa Phatisis," (Compl. ¶ 24), it neither indicates an absence of probable cause nor an outcome favorable to Plaintiff. According to the Complaint, almost a year later, Plaintiff was indicted by a Spotsylvania County grand jury for conspiracy to manufacture and distribute marijuana. These charges were brought by Boyle, the Assistant

14

Commonwealth's Attorney, "in conjunction with and with the encouragement of [Haney and Clark]." (*Id.* at ¶ 34.) The Complaint, however, fails to delineate what, if any, role Clark and Haney played in this prosecution or whether the charges were supported by probable cause. Finally, the Complaint alleges that Haney and Clark caused Plaintiff to be charged with three counts of child neglect based on "the alleged drug activities inside the house notwithstanding the complete and absolute lack of evidence of any wrongdoing on the part of Melissa Phatisis." (*Id.* at ¶ 32.) Absent from the Complaint is any indication of what, if anything, Haney and Clark did to cause the charges to be brought. Moreover, there is no allegation of malice or a lack of probable cause.[10] Affording Plaintiff the benefit of all reasonable inferences, and viewing the facts in the light most favorable to her, the Court is not convinced that Count VI alleges a plausible claim for malicious prosecution. As is characteristic of the Complaint generally, it lacks the degree of specificity necessary to elevate the claims beyond speculation.

The factual basis for Count VII is even more shallow. The charges in Stafford County forming the basis for this claim were, according to the Complaint, initiated by Boyle, "in furtherance of the agreement and conspiracy with Tripp Haney and Jason Clark." (*Id.* at ¶ 47.) This conclusory statement falls far short of pleading a viable claim for malicious prosecution against Clark and Haney. *See Lewis*, 281 Va. at 723.

Based on the foregoing, the Court will grant all Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Specifically, the Court finds that the

---

[10] Once again, the Court must point out that the common law claim for malicious prosecution embraced in Count VI consists of generalized allegations without any particularization of what specific events in the text of the Complaint support the claim.

claims against Boyle pertained to actions within the scope of his prosecutorial duties for which he is entitled to absolute immunity. As to Boyle, the claims against him will be dismissed with prejudice.

With respect to the claims against sheriff's deputies Haney and Clark, the Complaint fails to allege sufficient facts to state a viable claim to relief that is plausible on its face. In its current form, the Complaint is a composite of legal conclusions without the requisite factual enhancement. The claims against Haney and Clark will be dismissed without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

                                                              /s/
                                            Henry E. Hudson
                                            United States District Judge

Date: August 13, 2013
Richmond, VA